UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-060129-CR-GOLDBERG

UNITED STATES OF AMERICA,

        Plaintiff,

v.

THOMAS RAFFANELLO
and
BRUCE PERRAUD

        Defendants.
_____/

**OPPOSITION BY THE UNITED STATES TO DEFENDANT PERRAUD'S
AND DEFENDANT RAFFANELLO'S MOTIONS FOR JUDGMENT OF ACQUITTAL**

        The United States of America, by and through the undersigned counsel, respectfully submits this Opposition to Defendant Perraud's and Defendant Raffanello's Motions for Acquitttal (D.E. 175, 176).[1]  For the reasons set forth below, the Defendants' motions should be **DENIED**.

**I.  INTRODUCTION**

        Defendants Perraud and Raffanello are charged with conspiracy, in violation of 18 U.S.C. § 371 (Count One), obstruction of a pending proceeding before the SEC, in violation of 18 U.S.C. § 1505 (Count Two), destruction of records in a federal investigation, in violation of 18 U.S.C. § 1519 (Count Three), and destruction of documents in an official court proceeding, in violation of 18 U.S.C. § 1512(c) (Count Four).  The elements of these offenses are described below.[2]

---

    [1]  Defendant Raffanello's motion is styled as his "Initial Rule 29 Motion."

    [2]  The elements of Counts One, Two and Three are also described and discussed in Magistrate Judge Rosenbaum's Report and Recommendation at pages 29-30 (Count Two), 37 (Count Three), and 40 (Count One).

Count One of the Second Superseding Indictment charges Raffanello and Perraud with conspiracy, in violation of 18 U.S.C. § 371, to commit federal offenses, those being, obstruction of proceedings before departments and/or agencies, in violation of 18 U.S.C. § 1505, destruction of records in a federal investigation, in violation of 18 U.S.C. § 1519, and destruction of documents in an official court proceeding, in violation of 18 U.S.C. § 1512(c).  In order to sustain a conviction under § 371 the government must show: (1) the existence of an agreement to achieve an unlawful objective; (2) the defendant's knowing and voluntary participation in the conspiracy; and (3) the commission of an overt act in furtherance of the conspiracy. United States v. U.S. Infrastruture, Inc., 576 F.3d 1195, 1203 (11th Cir. 2009); United States v. Brenson, 104 F.3d 1267 (11th Cir. 1997); United States v. Hansen, 262 F.3d 1217 (11th Cir. 2001).  The government is not required to prove that a defendant had knowledge of all details of the conspiracy.  United States v. Guerra, 293 F.3d 1279 (11th Cir. 2002).  The government must prove that the object of the conspiracy, as alleged in the indictment, is in fact the object that the defendant agreed to achieve.  The three particular federal offenses that were the objects of the conspiracy are further described below.

Count Two of the Second Superseding Indictment charges Raffanello and Perraud with obstruction of a proceeding before the SEC, in violation of 18 U.S.C. § 1505, and aiding and abetting that offense, in violation of 18 U.S.C. § 2. The government is required to prove that: (1) there was a proceeding pending before a department or agency of the United States; (2) the defendant was aware of the pending proceeding; and (3) the defendant intentionally tried to corruptly influence, impede or obstruct  the pending proceeding. United States v. Price, 951 F.2d 1028, 1031 (9th Cir. 1991)(citing United States v. Sutton, 732 F.2d 1483, 1490 (10th Cir. 1984); United States. v. Quattrone, 441 F.3d 153 (2nd Cir. 2006).  Courts have construed the term "proceeding" broadly and,

in at least one instance, found that an investigation by the Drug Enforcement Administration was a "proceeding" under 18 U.S.C. § 1505. United States. v. Adams, 472 F.Supp.2d 811 (W.D. Va. 2007).

Count Three of the Second Superseding Indictment charges Raffanello and Perraud with destruction of records in a federal investigation, in violation of 18 U.S.C. § 1519, and aiding and abetting that offense, in violation of 18 U.S.C. § 2. In order to sustain a charge of destruction of records in a federal investigation, the United States must show that (1) an investigation or other matter within the jurisdiction of a department or agency of the United States must have been pending or contemplated by such department or agency of the United States; (2) the defendant was aware of the pending or contemplated matter or investigation; and (3) the defendant knowingly altered, destroyed, mutilated, or concealed something (any record, document, or tangible object) with the intent to impede, obstruct, or influence the pending or contemplated matter or investigation, or any matter in relation to or contemplation of any such matter or case. See United States v. Hoffman-Vaile; 568 F.3d 1335, 1343 (11th Cir.2009); United States v. Lessner, 498 F.3d 185, 186 (3rd Cir. 2007); United States v. Wortman, 488 F.3d 752 (7th Cir. 2007). 18 U.S.C. § 1519 was "meant to apply broadly to any acts to destroy or fabricate physical evidence so long as they are done with the intent to obstruct an investigation or matter within U.S. jurisdiction, or in anticipation of such matter." United States v. Ionia Management, 526 F.Supp.2d 319, 329 (D. Conn. 2007), citing 148 Cong. Rec. S74 at 18-19 (daily ed. July 26, 2002).

Count Four charges Raffanello and Perraud with destruction of documents in an official court proceeding, in violation of 18 U.S.C. § 1512(c). The government must prove that (1) there was an official proceeding; (2) the defendant corruptly altered, destroyed, mutilated, or concealed a record,

3

document, or other object, or attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding or (3) the defendant otherwise obstructed, influenced, or impeded any official proceeding, or attempted to do so. See United States v. Perez, 575 F.3d 164, 165 (2nd Cir. 2009). The statute does not require proof of materiality. United States v. Ortiz, 367 F. Supp. 2d 536, 542-44 (S.D.N.Y. 2005), affirmed without opinion, 220 Fed. Appx. 13 (2d Cir. 2007). The term "official proceeding" means a proceeding before a judge or court of the United States. 18 U.S.C. § 1515(a)(1).

## II.     ARGUMENT

In considering a motion for entry of a judgment of acquittal, a district court must examine the evidence and draw all reasonable inferences and credibility choices in the light most favorable to the government. United States v. Tate, 2009 WL 3490293, * 6 (11th Cir. 2009); United States v. Merrill, 513 F.3d 1293, 1299 (11th Cir. 2008); United States v. Hernandez, 433 F.3d 1328, 1333 (11th Cir. 2005). It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion of guilt. United States v. Thomas, 8 F.3d 1552, 1556 (11th Cir. 1993). Further, in determining the sufficiency of the prosecution's case, a court makes no distinction between circumstantial and direct evidence. Tate, 2009 WL 3490293 at * 7.

The government has met its burden to this point in the trial as follows. As discussed in more detail below, including specific references to portions in the testimony thus far transcribed, the evidence, taken in the light most favorable to the government, shows the following: Through press accounts, Raffanello, Perraud and Belovich had knowledge of an on-going SEC investigation concerning the activities of their employer, Robert Allen Stanford and his affiliated entities. They were also aware of the SEC investigation, the SEC lawsuit, proceedings in and orders issued by the

4

United States District Court for the Northern District of Texas, including an Order Appointing a Receiver and a Temporary Restraining Order. The three further had knowledge of the email from the Receiver. With this knowledge, they understood that they were not to destroy documents relating to Robert Allen Stanford, Stanford Financial Group, and other entities affiliated with Robert Allen Stanford and that they were to cooperate with the Receiver. Instead, Raffanello, Perraud and Belovich, after exchanging emails, telephone calls, and having at least one meeting, impeded the ongoing SEC investigation and the District Court proceeding, intentionally destroying documents at SFG's Fort Lauderdale office where they worked. Raffanello and Belovich, with Perraud present, confronted a representative of the Receiver, failed to disclose the shredding and refused to provide information to the Receiver's representative concerning the destroyed documents and records and the operations at the Fort Lauderdale office

.   **The Defendants wrongful destruction of the documents and obstruction of the SEC and Court Proceedings is not saved by Title 15**

In their motions, Defendants Perraud and Raffanello largely have focused on their claims that they somehow were entitled to destroy the hard copy documents and to impede the SEC investigation and the court proceeding simply because the office had a policy of "preserving" documents. Perraud asserts that the defendants both "complied" with Title 15, United States Code, Section 7001 by "preserving all of the business records of their office electronically." Perraud Motion at 3. Perraud then contends that the defendants cannot be prosecuted for the "destruction of records" because those "records" were (he claims) "preserved" electronically. Perraud Motion at 6.[3] Raffanello, similarly,

---

[3] Raffanello further contends, without citation to testimony, that FTI had been given access to "everything" at the Fort Lauderdale office and had "copied" electronic records before FTI left the office. Even if there were evidence adduced at trial at this point of such, that still would not refute that documents had been shredded.

substitutes his own elements of the charges for his own purpose, wrongly contending that all of the counts require proof "(a) that Raffnello knowingly destroyed, altered or withheld documents which he was *required to preserve*." Raffanello Motion at 2, 3. Raffanello contends that he complied with federal law Title 15, United States Code, Section 7001, regarding "the preservation of documents." Raffanello Motion at 4.

On the contrary, Title 15, United States Code, Section 7001 is completely irrelevant. It is simply a rule of contract construction, stating that the fact that documents relating to a transaction are stored in electronic form complies with any rule saying that documents concerning such contracts must be retained for the contract to be held valid.[4] Perraud has cited no case holding that Section 7001 in any way allows anyone to willfully destroy hard copy documents in order to impede an SEC investigation. Rather, the charged offenses, insofar as they relate to documents, require proof that the defendants "altered, destroyed, mutilated, or concealed" a record, document, or other object, or attempted to do so.

### The destroyed documents were relevant to the SEC and court proceedings

Perraud and Raffanello also seem to contend, despite clear evidence to the opposite and common sense, that the hard copy documents which they destroyed were not useful to the SEC investigation and the Court Proceeding. As is clear from the Order Appointing Receiver and the Temporary Restraining Order, the SEC moved the court for the preservation, and the court ordered the preservation, of **all** of the property, records and documents of Stanford and **all** of his related

---

[4] The statute clearly states at 7001(b)(1) that: "This subchapter does not limit, alter, or otherwise affect any requirement imposed by a statute, regulation, or rule of law relating to the rights and obligations of persons under such statute, regulation, or rule of law other than a requirement that contracts or other records be written, signed, or in nonelectronic form. . ."

entities and ordered that documents not be destroyed. This contention also wholly discounts the clear testimony of Michael King as to the relevance and importance of the documents at SFG Fort Lauderdale to the SEC investigation and court proceeding.[5] [6]

### The evidence shows the corrupt intent of the Defendants' actions

Perraud and Raffanello also contend that there is no evidence of corrupt intent.[7] Raffanello's actions to cause the destruction of the documents on February 25, 2009 and to obstruct David Schulte when Raffanello confronted Schulte on February 26, 2009 show his corrupt intent when considered in light of the extensive knowledge that Raffanello had gained through the press reports he accessed, the SEC Complaint, the Order Appointing the Receiver, the Temporary Restraining Order, his conversations with Lula Rodgrituez (to which she testified), and the various emails, all of which gave him knowledge that he should not destroy SFG documents

The government introduced Government Exhibits 62, 68, 69, 70, 70a, 72, 75, 76, 77, 78, 79, 79a, and 81-98 through Emerson Lacson ("Lacson"). The aforementioned Government Exhibits are, for the most part, emails written by and between Stanford employees - including Perraud, Raffanello and Belovich. The Government Exhibits detail the scope and nature of the allegations from press reports in the weeks leading up to February 17th. These exhibits, as well as the Complaint, Order

---

[5] As noted above in the discussion of elements, materiality does not apply to a violation of 18 U.S.C. Section 1512(c).

[6] Emily Ocheltree testified that, among other things, SFG Fort Lauderdale conducted background/due diligence on potential investors of SIBL and property which Stanford wished to purchase. (2/3/10, pg. 83-84)

[7] Raffanello also appears to contends that "even if he was inaccurate in his assessment of what the order meant, such evidence is still legally insufficient." Raffanello Motion at 14. Raffanello's "mistake of fact or law" defense has not only not been raised by the evidence thus far, but it is not appropriate for consideration at this juncture in the trial.

Appointing Receiver, and Temporary Restraining Order show the information that was available to the Defendants in the weeks leading up to February 17th: The following are passages from the emails:

**Ex. 62**

Title -        Stanford Group under Probe

Para 2 -       The Stanford Group is being investigated by the SEC over deposits made at their offshore bank in Antigua.

Para 4 -       The SEC investigate alleged corporate crimes that can lead to criminal prosecutions.  They are investigating the Stanford Group after subpoenas were issued to two former employees asking for information about sales by Stanford's offshore bank.

**Ex. 68**

Title -        Is Stanford Financial's Offer Too Good to Be True?

               Regulators eye the high-flying firm whose CDs boast interest rates more than double the market average

P.2, Para.2 -  BusinessWeek has learned that the SEC, FINRA, and Florida are all investigating Stanford Financial.  The probes are focusing on the high-yield CDs sold by Stanford Financial and the investment strategy

Para. 5 -      In the wake of Bernard Madoff's alleged $50 billion Ponzi scheme, regulators and investors around the world are increasingly jittery about firms that promise consistent, and higher than normal returns.

**Ex. 70a**

Title -        Business Week: Is Stanford Financial's Offer Too Good to be True? Regulators are eyeing the high-flying firm, whose CDs offer returns more than double the market average

Para. 2 -      But skeptical federal and state regulators are now taking a hard look at Stanford's operation

8

| | |
|---|---|
| Para. 3 - | BusinessWeek has learned that the SEC, the Florida Office of Financial Regulation, and FINRA . . . are all investigating Stanford Financial. The probes focus on the high-yield CDs and the investment strategy behind them. |
| Para. 6 - | In the wake of Bernard Madoff's alleged $50 billion Ponzi scheme regulators and investors around the world are increasingly jittery about money-management firms that promise consistently higher-than-normal returns. |
| P. 3, Para. 1 - | Broker Allegations |
| | **. . . The pair say in the complaint that Stanford Financial destroyed documents "during an ongoing SEC inquiry" into the CDs and related sales methods."** (emphasis supplied). |

**Ex. 72**

| | |
|---|---|
| Text - | Tom From the London Financial Times. In the Post MADOFF era everything he does will be under a microscope. |

**Ex. 76**

| | |
|---|---|
| Title - | Billionaire Responds to SEC Probe |
| Para. 4 - | We have been fully cooperative with the regulators, he wrote, adding the firm is focused on upholding industry guidelines and standards |

**Ex. 77**

| | |
|---|---|
| Title - | BusinessWeek - Ex-Employees at Heart of Stanford Financial Probe |
| P. 3, Para. 2 - | SEC INVESTIGATION GOES BACK THREE YEARS.<br>BusinessWeek previously reported that the SEC, FINRA, and Florida all are investigating the high yielding CDs sold by Stanford's offshore bank, as well as the investment strategy behind them. FINRA and Florida regulators began investigating Stanford Financial and its banks within the past several months. But people familiar with the probes say the SEC investigation goes back at least three years and possibly longer. |

| | |
|---|---|
| P. 1 - | Saw it . . . WSJ running with FBI probe . . . |

**Ex. 81**

| | |
|---|---|
| Title - | The Pressure Mounts on Stanford |
| Para. 1 - | Stanford is beginning to feel the fallout from an investigation by securities regulators and federal authorities into the firm's business practices |
| Para. 3 - | The dismissals come on the heels of the revelation that the SEC and other securities regulators are investigating Stanford Financial's offshore bank in Antigua, which specializes in selling high-yielding certificates of deposit to wealthy investors.  The Wall Street Journal reports that the FBI is also investigating. |

**Ex. 83**

| | |
|---|---|
| Text - | Gentlemen, I have just received a phone call from Suzanne Hamm that US Marshalls have showed up at our Memphis office and have a Court Order to put the Stanford Company under Receivership.  They are gathering all the employees in the lobby to give them directions of what they need to do next.  A lawsuit has been filed against SIB, SGC and SFG.  We should start getting prepared for the same thing happening in other offices around the country and abroad.  Please advise on next steps. |
| Text - | Suzanne has informed us that they are not allowed to use their computers or faxes so she can not send me copies of any orders or documents.  The US Marshalls have confirmed that the order is being implemented simultaneously to Houston, Tupelo and Memphis.  We should expect it to be extended to other offices that were visited a few weeks ago.  The story has already crossed the wires |

**Ex. 87**

| | |
|---|---|
| Title - | Texas Financial Firm Accused of Fraud |
| P. 2, Para. 2 - | In the Complaint, the SEC requested that the defendants' assets be frozen and that a receiver be appointed to take control of business operations. |

**Ex. 88**

Para. 3 -   Pursuant to the SEC's request for emergency relief for the benefit of defrauded investors, U.S. District Judge Reed O'Connor entered a temporary restraining order, froze the defendants assets and appointed a receiver to marshal those assets

Para. 5 -   Rose Romero, Regional Director of the SEC's Fort Worth Regional Office, added, "We are alleging a fraud of shocking magnitude that has spread its tentacles throughout the world."

P. 2, Para. 6 -   The SEC's investigation is continuing

**Ex. 96**

P. 2 -   What Must We Do? - through the Order Appointing Receiver, the Court has ordered that all employees and agents of the Stanford companies cooperate with the Receiver.  It further orders that all assets and records be turned over to the Receiver, as requested

P. 2 -   What May We Not Do? - You have been ordered to preserve (and not hide or destroy) any and all documents, notes, and records including email and other electronic communications. Accordingly, you may not hide, destroy or alter any document or electronic record relating to the company.

**Ex. 98**

Text -   Colleagues, please ensure that you follow the directions of the Stanford Financial Receiver to the letter.  These directives are court mandated and should be abided by law.

That Defendants caused the destruction of the hard-copy documents at SFG is, essentially, stipulated in this case.  Defendants argue in their Motions that the scheduled shredding at SFG was delayed two weeks "so more garbage would have naturally accumulated."  However, the defendants do not point to the invoices in Government Exhibit 9 - 54 that show that there were entire months that SFG had gone without shredding in the past.  **Gina Menicucci** ("Menicucci"), an employee of

11

Florida Shredding, testified that the shredding company destroyed a quantity of documents from SFG's Fort Lauderdale office on a scale much larger than SFG would regularly dispose. Government Exhibits 9 - 54 display this fact. Moreover, both Florida Shredding's owner **Manuel Pichardo** ("Pichardo") and driver **Otto Aguiar** ("Aguiar") testified that it was not common for SFG to dispose of the quantity of documents that it had on February 25th. On direct examination, Aguiar gave the following testimony:

> Q.   Let me ask you about the previous months you went to Stanford Financial Group. What did you take away from the Stanford Financial Group?
>
> A.   A full console, nothing more than that. (T. 2/2/10, pg. 62, L. 10-13).

Both Aguiar and Pichardo testified that they were never directed to destroy this amount of documents from SFG's office. (Aguiar Testimony, pg. 71, Ls. 3 -20, Pichardo Testimony, pg. 89, Ls. 12-19).

Defendants state in their Motion that "the rescheduling of the shred to February 25th was done by Florida Shredding, not by the Defendants." (Emphasis omitted). In fact, in response to a question by defense counsel, Menicucci stated that:

> Q.   I think what you said was you received a call or someone at your office received a call on the 23rd to confirm that service.
>
> A.   Somebody called us on the 23rd to schedule the service. It was already probably set up for the 25th because we were going to be in the area again. (T. 2/2/10, pg. 40, L. 5-9).

Menicucci testified that she was not aware of the Securities and Exchange Commission ("SEC") complaint or the court orders on February 17th. Rather, she testified that when she received a call from an SFG employee to cancel the shredding scheduled for that day, she was told that the SFG employees were leaving early that day. (2/2/10, pg. 21, Ls. 1-4).

Regardless of her testimony that it was the office policy to scan and save certain documents

to the SFG computers, **Emily Ocheltree** also testified that she does not know the extent and nature of the hard-copy documents that were destroyed on February 25th. For example, during re-direct examination, <u>Ocheltree testified that she did not know what documents were destroyed from Raffanello's desk; what documents were destroyed from Belovich's desk; and what documents were destroyed from Perraud's desk.</u> (2/4/10, pgs. 62-63). Ocheltree further testified that she was unaware of work-related items that were kept at Raffanello's desk. (2/3/10, pg. 90, Ls. 7-19). The government played a surveillance tape for Ocheltree which captured part of the activities at SFG on February 25th. (Government Exhibit 57). While watching the tape, Ocheltree testified that she did not watch any of the other employees in order to observe the hard-copy documents that they were destroying. (2/3/10, pgs. 144-145). When asked to identify certain items on the videotape that an SFG employee was apparently delivering to the shredding truck, Ocheltree stated that she did not know what those items were. (2/3/10, pg. 144, Ls. 10-14).

The government presented evidence through **David Schulte** ("Schulte"), the representative of the Receiver who attempted to secure and inventory the Fort Lauderdale office on February 25th and February 26th. Raffanello contends that the confrontation between Schulte and Raffanello was an "understandable" encounter. Schulte's testimony, taken in the light most favorable to the government, shows additional intentionally obstructive acts by Raffanello. In addition to destroying the hard-copy documents that were housed in SFG's Fort Lauderdale office, the Defendants interfered and impeded the Receiver by withholding information and by providing misleading information to Schulte. For example, Schulte attempted to ask Perraud questions regarding the nature and function of the SFG Fort Lauderdale office. Schulte testified that Raffanello immediately interceded and stated that "Mr. Raffanello stated that Mr. Perraud would not be answering any

13

questions." (2/4/10, pg. 175, Ls. 9-14).  Schulte attempted to ask Raffanello questions regarding the nature and function of SFG's Fort Lauderdale office.  Raffanello provided basic information, but when asked who the other employees were who worked in the SFG Fort Lauderdale office, Raffanello stated, "I am not going to tell you." (2/4/10, pg. 174, Ls. 16-17).

When asked about the documents or lack of documents Schulte observed in the SFG office, Raffanello stated that, "they had pretty much a paperless office and everything they had was on the computers and on their server." (2/4/10, pg. 166, Ls. 16 -17).[8]  However, Schulte testified that "no mention was made by anyone about any . . ."  The following exchange occurred between Schulte and the Court:

> Q. At that point, the morning of the 26th, you had no idea about any shredding?
>
> A. That's correct.

(2/4/10, pgs. 166 -167).

---

[8] Raffanello's various claims, as related by FBI Special Agent Pat Fransen's testimony and as recall by David Schulte's testimony, are wholly self-serving and not entitled to credibility.  The Fort Lauderdale office was a "paperless" office only after Raffanello and Perraud caused the shredding of the documents.

**CONCLUSION**

Based on the reasons above, the United States respectfully requests that Defendant Perraud's and Defendant Raffanello's Motions for Judgment of Acquittal be **DENIED**.

Dated: February 8, 2010

                            Respectfully submitted,

                            JEFFREY H. SLOMAN
                            UNITED STATES ATTORNEY

                            s/ Jack B. Patrick
                            Jack B. Patrick
                            Senior Litigation Counsel
                            United States Department of Justice
                            Criminal Division, Fraud Section
                            Court ID # A5500596
                            1400 New York Avenue, NW
                            Washington, D.C. 20005
                            E-Mail: Jack.Patrick2@usdoj.gov
                            Tel: (202) 514-9842
                            Fax: (202) 514-0152

## CERTIFICATE OF SERVICE

      **I HEREBY CERTIFY** that on February 8, 2010, I electronically filed the foregoing Opposition to Defendant Perraud's and Defendant Raffanello's Motions for Judgment of Acquittal with the Clerk of Court via the CM/ECF system which will send an e-mail notice of such filing to all CM/ECF participants in this case.

                                                    s/Jack B. Patrick
                                                    JACK B. PATRICK
                                                    Senior Litigation Counsel